JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEUSCHEL,<br><br>Plaintiff,<br><br>v.<br><br>BAYER HEALTHCARE PHARMACEUTICALS, INC.; BAYER PHARMA AG; BAYER CORPORATION; BAYER HEALTHCARE, LLC; MCKESSON CORPORATION; MCKESSON MEDICAL-SURGICAL INC.; MERRY X-RAYCHEMICAL CORPORATION; and DOES 1 THROUGH 50, inclusive,<br><br>Defendant. | Case No. 2:22-cv-08338-HDV-PDx<br><br>**ORDER GRANTING DEFENDANT BAYER HEALTHCARE PHARMACEUTICALS INC., BAYER CORPORATION, AND BAYER HEALTHCARE LLC'S MOTION TO DISMISS [36]** |

Before the Court is Defendants Bayer Healthcare Pharmaceuticals, Inc., Bayer Pharma Ag, Bayer Corporation, and Bayer Healthcare, LLC's (collectively, "Bayer" or "Bayer Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint ("Mot."), [Dkt. No. 36]. The matter is fully briefed and oral argument was heard on September 7, 2023.

Defendants' Motion asserts principally that Plaintiff's claims accrued in 2010, when Plaintiff eventually learned the name of the specific drug (Magnevist) that was administered to him, and that Plaintiff's claims are consequently time-barred by the applicable two-year or three-year statutes of limitations. Mot. at 14-15. Plaintiff's opposition invokes the discovery rule and argues that the claims are within the statute of limitations because Plaintiff did not learn of the product's allegedly inherent defects until December 2017 when he read a certain article in Forbes magazine. *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Motion to Dismiss Second Amended Complaint ("Opp.") at 17 [Dkt. No. 45].

The Court finds that, even accepting Plaintiff's allegations as true for purposes of this motion, Plaintiff had actual or constructive knowledge of his claims by 2013 at the latest when he received two separate medical opinions identifying Magnevist as the cause of his injuries. For this reason, Plaintiff's claims are all time-barred. Defendants' Second Amended Complaint is dismissed without leave to amend.

I.  **BACKGROUND**

  **A. Second Amended Complaint**

Plaintiff brings this case alleging that he was injured after being injected with the Bayer Defendants' linear Gadolinium-Based-Contrast-Agent (GBCA), called Magnevist, for an imaging procedure performed on June 12, 2009. Plaintiff's Second Amended Complaint ("SAC"), [Dkt. No. 30] ¶ 1. GBCAs, including Magnevist, are administered to patients intravenously to enhance the quality of magnetic resonance imaging, such as MRIs and MRAs. SAC ¶ 22. At the time of the injection in June 2009, Plaintiff alleges he had pre-existing moderate renal insufficiency, putting him in Chronic Kidney Disease (CKD) class 3. SAC ¶ 116. Plaintiff alleges that the operative warning for Magnevist at the time of his injection was defective because it failed to warn that the product

2

could cause harm to patients in CKD Class 3.[1]  SAC ¶¶ 115-117.

Immediately upon the Magnevist injection in June 2009, Plaintiff suffered symptoms of intense pain and weakness.  SAC ¶¶ 115, 118.  He alleges severe symptoms such as renal failure, skin disorders, hair loss, fibrotic accumulation, muscular and joint contractures, movement restrictions, pain, and Nephrogenic Systemic Fibrosis (NSF) over the ensuing years as a result of the June 2009 Magnevist injection.  SAC ¶¶ 136-137.

Plaintiff alleges that he did not initially know which product was used during his imaging procedure.  SAC ¶ 121.  Plaintiff further alleges that, in August 2010, he learned that the contrast dye used for his 2009 imaging procedure was Bayer's Magnevist.  SAC ¶ 121.  By 2013, Plaintiff received two medical opinions stating that his symptoms were due to the June 2009 injection of Magnevist.  SAC ¶ 124.  Based on this information, Plaintiff pursued a claim for negligence against Kaiser Permanente based on alleged "gadolinium toxicity" from Magnevist use.  SAC ¶ 125.

### B. Procedural History

Plaintiff initially filed this case in California state court on December 26, 2019, and Defendants timely removed the case on November 15, 2022.  [Dkt. No. 1].  Plaintiff requested, and Defendants did not oppose, leave to amend the First Amended Complaint, [Dkt. No. 24; Dkt. No. 27], which the Court granted [Dkt. No. 29].

Plaintiff filed his Second Amended Complaint on March 7, 2023 asserting claims for (1) product liability based on a design defect and failure to warn; (2) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; (3) violation of the Unruh Civil Rights Act, Cal. Civ. C. § 51, *et seq.*; and (4) negligence.  The Bayer Defendants filed the present Motion on April 20, 2023.  [Dkt. No 36].  The McKesson Defendants[2] joined Bayer's Motion to Dismiss.  [Dkt. No. 39].

---

[1] Plaintiff alleges that on December 20, 2010, Bayer and the FDA modified Magnevist's Black Box Warning, which—although Plaintiff argues was still defective—indicated a risk for those with moderate kidney disease (CKD class 3, which Plaintiff fell into at the time).  SAC ¶¶ 48-53.

[2] As used herein, "McKesson" refers collectively and generally to Defendants McKesson Corporation and McKesson Medical-Surgical Inc.

3

## II. LEGAL STANDARD

Defendant's Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Rule 12(b)(6) allows a party to seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Labels, conclusions, and "formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A "district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

\\\

### III. DISCUSSION

Plaintiff brought this action on December 26, 2019.[3] Plaintiff's claims for products liability, violation of California's Unruh Act, and negligence are all subject to a two-year statute of limitations. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 809 n. 5 (2005) ("The statute of limitations for an action for injury to an individual caused by the wrongful act or neglect of another must be commenced within two years from the date of accrual.") (citing Cal. Civ. Proc. Code § 335.1); *Counter v. Taras Invs., LLC*, 2022 WL 2234954, at *3 (C.D. Cal. Jan. 20, 2022) ("Unruh Act claims are subject to a two-year statute of limitations."). Thus, if Plaintiff's claims accrued before December 26, 2017, these three claims are time barred.

Plaintiff also brings a claim under Title III of the ADA. The ADA does not provide a statute of limitations for Title III claims. Therefore, under *Wilson v Garcia*, federal courts look to the most analogous state statutes to determine limitations periods. 471 U.S. 261, 266-67 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."). The Ninth Circuit has not yet decided the limitations period for ADA Title III claims, but explained that "the only *conceivable* options are California's two-year personal injury provision and its three-year period for '[a]n action upon a liability created by statute.'" *Est. of Stern v. Tuscan Retreat, Inc.*, 725 F. App'x 518, 526 (9th Cir. 2018) (emphasis in original) (citing Cal. Civ. Proc. Code §§ 335.1, 338(a)). Assuming without deciding that Plaintiff's ADA claim is subject to the more generous three-year limitations period, the ADA claim is time barred if it accrued prior to December 26, 2016.[4]

Under California law, "a cause of action accrues at the time when the cause of action is complete with all of its elements." *Fox*, 35 Cal. 4th at 806 (internal quotation omitted). "Because

---

[3] Plaintiff argues he intended to file his complaint on December 18, 2019, but filing errors caused his complaint to be filed on December 26, 2019. As discussed below, it makes no difference to the outcome here.

[4] As discussed below, the outcome remains the same regardless of whether the two-year or three-year statute of limitations applies.

'the last element to occur is generally, as a practical matter, the injury to the future plaintiff,' the statute of limitations typically begins to run on the date of the plaintiff's injury." *Id*.

However, California's "discovery rule ... delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id*. at 886. Under this rule, a cause of action accrues and the statute of limitations begins to run when a plaintiff "at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least 'suspects ... that someone has done something wrong' to him …." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal.3d at 1110). "Plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Fox*, 35 Cal. 4th at 808; *see also Nguyen v. W. Digital Corp.*, 229 Cal. App. 4th 1522, 1553 (2014) ("[A] potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of ***all*** potential causes of that injury.") (internal citation omitted) (emphasis added).

Here, Plaintiff's own allegations show that he had actual notice—or at the very least inquiry notice—of his claims no later than 2013. By 2013, Plaintiff alleges he had received two medical opinions claiming his symptoms were due to the June 12, 2009 injection of Magnevist. SAC ¶ 124. And further, in 2013, he was actively pursuing arbitration against Kaiser Permanente based on his alleged "gadolinium toxicity" from Magnevist use.[5] SAC ¶ 125. While it is arguable whether Plaintiff had notice of his claims in 2009 (when he suffered immediate symptoms from the injection), or perhaps in 2010 (when he learned of the Magnevist connection) he had inquiry notice ***at the very latest*** by 2013, when Plaintiff had received two medical opinions tying his symptoms to the June 2009 Magnevist injection and had sued other parties for the same harm underlying his

---

[5] Bayer requests that the Court take judicial notice of documents outside the pleadings in connection with this Motion, including court documents from Plaintiff's 2013 arbitration against Kaiser Permanente. *See* Corrected Request for Judicial Notice in Support of Motion to Dismiss Second Amended Complaint, [Dkt. No. 38], Exhibits B-F. The find these court records the proper subject of judicial notice. Courts "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Monynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal citations and quotation marks omitted).

claims here. At that point, the clock was running and the statute of limitations expired two or three years later (depending on the claim), long before Plaintiff filed suit in this case.

Plaintiff disputes that he was on notice of his claims in 2013—even after suing a different party for the same injury. Plaintiff's theory is that he sued only Kaiser, not Bayer, in 2013 because he believed at the time that it was Kaiser's decision to inject him with the dye that caused his injury—not that the dye itself was defective. Opp. at 17. Plaintiff asserts that he was not on notice of the claims at issue in this suit until he read an article[6] about Chuck Norris and his wife suing Bayer on the theory that Magnevist was a defective product.[7] Opp. at 18.

But the law is clear that the discovery rule does not toll the statute of limitations where (as here) Plaintiff knows he was injured, and even knows the cause of the injury, but does not know exactly who is ***responsible*** for the harm:

> [T]he plaintiff may discover, or have reason to discover, the cause of action even if he does not suspect, or have reason to suspect, the identity of the defendant. That is because the identity of the defendant is not an element of any cause of action. It follows that

---

[6] Plaintiff asks the Court to take judicial notice of the December 26, 2017 Forbes article. Request for Judicial Notice in Opposition to Defendants' Mot. to Dismiss Second Amended Complaint [Dkt. No. 47], Exhibit A. While a court generally may not consider evidence or documents beyond the complaint in the context of a Rule 12(b)(6) motion to dismiss, Federal Rule of Evidence 201(d) provides that "[a] court shall take judicial notice [of an adjudicative fact] if requested by a party and supplied with the necessary information." A court may take judicial notice of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Id*. A court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions," despite such documents not being physically attached to the pleadings. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). While matters of public record are proper subjects of judicial notice, a court may take notice only of the authenticity and existence of the documents, not the veracity or validity of their contents. *See Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001). The Court finds the existence of the article is not subject to reasonable dispute and therefore takes judicial notice of the article.

[7] This fact is not alleged in Plaintiff's operative complaint. Plaintiff states in his Opposition that this fact was alleged in ¶ 84 of the First Amended Complaint, [Dkt. No. 1-1] but inadvertently omitted from the Second Amended Complaint, [Dkt. No. 30]. The Court will consider this allegation as part of the record.

   failure to discover, or have reason to discover, the identity of the defendant does not postpone the accrual of a cause of action, whereas a like failure concerning the cause of action itself does.

*Norgart*, 21 Cal. 4th at 399 (internal citations omitted).

  Plaintiff's heavy reliance on *Eidson v. Medtronic, Inc.*, 40 F.Supp.3d 1202 (2014 N.D. Cal) is misplaced. The Plaintiff in *Eidson* had no reason to know the medical device was implanted in him during his surgery in 2005. *Id*. at 1216-17. No treating physicians informed him that the product was used during surgery and his doctors informed him that his continued pain was "due to a biological phenomenon in terms of the way [his] body uniquely reacted to surgery." *Id*. at 1219. The statute of limitations was tolled in *Eidson* because Plaintiff had no reason to suspect his symptoms were **due to any wrongdoing at all**.

  Here, Plaintiff knew the exact product used during his scan by August 2010 and knew wrongdoing involving that very product caused him injury by 2013 at the latest, as evinced by his lawsuit against Kaiser. That is all that is required, even under the discovery rule, for Plaintiff's claims to accrue. *Jolly*, 44 Cal. 3d at 1110 ("Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her."). Stated differently, Plaintiff by 2013 had actual or constructive knowledge of every element of the claims at issue.[8] The fact that Plaintiff

---

[8] For the same reason, fraudulent concealment will not toll the statute of limitations on Plaintiff's claims. The purpose of the fraudulent concealment doctrine is to prevent a defendant from "concealing a fraud ... until such a time as the party committing the fraud could plead the statute of limitations to protect it." *Bailey v. Glover*, 88 U.S. 342, 349 (1874). Thus, "[a] statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). The plaintiff bears the burden of pleading and proving fraudulent concealment. *Id*.; *see also Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988). To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) **the plaintiff did not have "actual or constructive knowledge of the facts giving rise to its claim"**; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim. *Hexcel*, 681 F.3d at 1060 (emphasis added); *see also Conmar*, 858 F.2d at 502; *Beneficial Standard Life Insurance Co. v. Madariaga*, 851 F.2d 271, 276 (9th Cir. 1988). Where a Plaintiff has actual notice of facts giving rise to his claim, fraudulent concealment will not toll the statute of limitations.

did not articulate or advance a claim against Defendants under an alternative product defect theory has no bearing on the application of tolling, and no case cited by Plaintiff's opposition holds otherwise.[9]

## IV.   CONCLUSION

For the reasons stated herein, Defendants' Motion is **granted** and the Second Amended Complaint is dismissed. Although generally a court granting a motion to dismiss should also grant leave to amend, "leave to amend need not be granted when 'any amendment would be an exercise in futility,' such as when the claims are barred by the applicable statute of limitations." *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018) (quoting *Steckman v. Hart Brewing*, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998)). Plaintiff has had nearly four years of litigation and two amendments to allege further facts that would avoid the statute of limitations. He has not done so, and his opposition similarly fails to address what other set of facts could be alleged in a third amended complaint to save the claims. Because the Court concludes that any amendment on these claims would be futile, the dismissal is made **without leave to amend**.

**IT IS SO ORDERED.**

Dated: September 15, 2023

Hernán D. Vera
United States District Judge

---

[9] Defendants also argue that Plaintiff's product liability claims fail because they are preempted by federal law. *See* Mot. at 21-23. Because the Court finds the claim to be clearly time-barred, it does not reach the question of preemption. For the same reason, the Court does not address the alternative arguments made by Defendants relating to the Unruh Act. *See* Mot. at 23-25.